UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

SUSAN KLUSS and JEFFREY TRICE,

Plaintiffs,

vs.

CREDIT EXCHANGE CORPORATION, STEVEN VANDERHOOF and DOES 1-10,

Defendants.

Case No.: SACV 09-00080-CJC(MLGx)

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiffs Susan Kluss and Jeff Trice (collectively "Plaintiffs") brought this action against their former employer, Defendant Credit Exchange Corporation ("Credit Exchange"), and its Chief Executive Officer Steven Vanderhoof (collectively "Defendants"). Credit Exchange refers customers to a network of pre-selected programs or services for debt consolidation, credit counseling, and debt settlement. Plaintiffs

allege that they worked as "Debt Consultants" or sales representatives, calling at minimum 200 potential clients per day to generate referrals to the pre-selected debt management services. If a referred customer ultimately enrolled in one of the debt management services, Plaintiffs earned a commission based on a percentage of the amount of the first payment installment a customer paid to the debt management service. Plaintiffs allege that they were required to work 50 to 60 hours per week, including two Saturdays per month, without overtime pay and that they were prevented from taking meal breaks and rest breaks. Plaintiffs assert eight causes of action against Defendants, including claims under the federal Fair Labor Standards Act ("FLSA") for failure to pay minimum wage, 29 U.S.C. §§ 206, 211(c), 216(b), and for denial of overtime compensation, 29 U.S.C. §§ 207, 211(c), 216(b), as well as California state law claims for failure to pay minimum wage, Cal. Lab. Code §§ 1194, 1197, denial of overtime compensation, Cal. Lab. Code §§ 510, 1194, failure to pay wages for compensable meal break periods, Cal. Lab. Code §§ 226.7, 512, failure to timely pay wages at conclusion of the employment relationship, Cal. Lab. Code §§ 201, failure to furnish itemized wage statements, Cal. Lab. Code § 226(a), and unfair and unlawful business practices, Cal. Bus. & Prof. Code § 17200. Plaintiffs now seek summary judgment on the issues related to Defendants' liability for their FLSA overtime compensation claim and their state law overtime compensation, meal break, waiting time, and wage statement itemization claims. Mr. Vanderhoof has not opposed Plaintiffs' motion for summary judgment that he is a "joint employer" who exercised direct day-to-day control over Plaintiffs' job duties, compensation and exemption classification and is therefore also liable to Plaintiffs under the FLSA and California Labor Code. Because Defendants have failed to present any evidence to support their affirmative defenses that Plaintiffs are exempt from the FLSA's overtime requirements under either the "retail or service establishment" or the "administrative" exemption, that Plaintiffs are exempt from California state law overtime requirements under the "commissioned employee" exemption, or that Plaintiffs waived their state law claims by signing a general release agreement, Plaintiffs' motion for

summary judgment is GRANTED with respect to those defenses. Plaintiffs' motion for summary judgment is therefore GRANTED with respect to Defendants' liability for failure to pay overtime compensation under the FLSA and California law. Plaintiffs' motion is DENIED with respect to Defendants' liability on all of their other state law claims.[1]

**BACKGROUND**

Plaintiffs Susan Kluss and Jeffrey Trice are former employees of Credit Exchange who worked at the Credit Exchange facility in Santa Ana, California. (Kluss Decl. ¶ 4; Trice Decl. ¶ 4.) Credit Exchange is a company that serves as a referral service between customers who are in need of debt management services or debt counseling and a pre-selected network of agencies that provide those services. (Vanderhoof Decl. ¶¶ 2–3; *id.* Ex. 1 at 6.) Ms. Kluss was employed as a Debt Consultant with Credit Exchange from July 30, 2007 through December 27, 2007. (Kluss Decl. ¶ 2.) Mr. Trice was employed as a Debt Consultant with Credit Exchange from July 2007 through July 2008. (Trice Decl. ¶ 2.) As Debt Consultants, Plaintiffs would be provided with a list of "leads" with names and telephone numbers of potential customers and would then telephone customers and attempt to obtain a sales commitment from the customer to be referred to one of the debt management companies in the referral network. (Kluss Decl. ¶ 5, Trice Decl. ¶ 5.) Plaintiffs used a script developed by Defendant Steven Vanderhoof, the Chief Executive Officer of Credit Exchange, that outlined the presentation Plaintiffs should make, including rebuttals to possible questions or objections from customers. (Kluss Decl. ¶ 5, Trice Decl. ¶ 5; Vanderhoof Dep. 39: 22–41:20.) Plaintiffs were not permitted to deviate from the script, (Kluss Decl. ¶ 5; Trice Decl. ¶ 5), or to refer clients to agencies

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* FED. R. CIV. P. 78; LOCAL RULE 7-15. Accordingly, the hearing set for January 31, 2011, at 1:30 p.m. is hereby vacated and off calendar.

that were not within the network, (Vanderhoof Dep. 34:4–20). Plaintiffs were expected to reach "production goals" of 200 "dials" or calls per day and at least 21 referrals per month. (Kluss Decl. ¶ 7; Trice Decl. ¶ 7.) In order to meet their production goals, Plaintiffs worked between 50 and 60 hours per week and at least two Saturdays per month. (Kluss Decl. ¶ 7; Trice Decl. ¶ 7.) Plaintiffs also regularly skipped the scheduled lunch break so that they could continue to place calls while they ate. (Kluss Decl. ¶ 8; Trice Decl. ¶ 8.)

For the first four or five weeks of their employment, Plaintiffs were paid $10 per hour or $400 per week. (Kluss Decl. ¶ 9; Trice Decl. ¶ 9.) After completing this "training period," Plaintiffs were paid on a commission-only basis for each referral. Plaintiffs earned a percentage of the first monthly payment that each referred customer made to a debt management plan. (Kluss Decl. ¶ 9; Trice Decl. ¶ 9.) The percentage of Plaintiffs' commission was based on the number of referrals they had made to the network. (Kluss Decl. ¶ 9; Trice Decl. ¶ 9.) Ms. Kluss estimates that her total gross earnings for the six months she was employed at Credit Exchange were $8599, and that her average weekly earnings were $399.95. (Kluss Decl. ¶ 10; *id.* Ex. A.) Mr. Trice estimates that his total gross earning for the year he was employed at Credit Exchange were $17,650, and that his average weekly earnings were $340. (Trice Decl. ¶ 10; *id.* Ex. A.) Neither Plaintiff was paid "overtime" for the hours they worked in excess of forty hours per week. (Kluss Decl. ¶ 10; Trice Decl. ¶ 10.)

**ANALYSIS**

Summary judgment is proper if the evidence before the Court "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual issue is "genuine" when there is sufficient evidence such that a

reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating either that there are no genuine material issues or that the opposing party lacks sufficient evidence to carry its burden of persuasion at trial. *Celotex Corp.*, 477 U.S. at 325; *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). Once this burden has been met, the party resisting the motion "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

**A. FLSA Exemptions from Overtime Compensation**

Under the FLSA, an employer must not employ any of its employees for a work week longer than forty hours without compensating the employees at a rate of one and one-half times their regular rate for the excess hours, unless a statutory exemption applies. 29 U.S.C. § 207(a)(1). "Employers have the burden of demonstrating that a particular employee, or category of employees, is not within the ambit of the overtime provision." *Gieg v. DDR, Inc.*, 407 F.3d 1038, 1045 (9th Cir. 2005). Exemptions from the FLSA must be narrowly construed. *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 295 (1959). Defendants contend that Plaintiffs are "exempt" from the FLSA overtime compensation requirements under either the "retail or service establishment" or the "administrative" exemptions to the FLSA. Defendants, however, have failed to present any evidence to support their contention that these two exemptions apply here.

To demonstrate that the "retail or service establishment exemption" applies to Plaintiffs, Defendants must show that (1) Plaintiffs are salespeople whose regular rate of pay exceeds one and a half times the minimum hourly rate under the FLSA and who earn more than half of their compensation as commissions on goods or services, and (2) Credit Exchange is a "retail or service establishment." *See* 29 U.S.C. § 207(i). Defendants cannot satisfy the second requirement of this exemption.

To determine whether an employer is a "retail or service establishment," courts continue to look to the former statutory definition in Section 13(a)(2) of the FLSA, 29 U.S.C. § 213(a)(2), which defines a "retail or service establishment" as one in which 75 percent of the annual dollar volume of sales or goods or services is "not for resale" and "is recognized as retail sales or services in the particular industry." *Gieg*, 407 F.3d at 1047–48 (citing 29 U.S.C. § 213(a)(2)) (finding that automobile leases are not sales for "resale" and therefore may be counted toward an auto dealership's annual dollar sales percentage); *see also Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 196 (1966) (finding that industry usage regarding whether sales are "retail" is not conclusive). Defendants have failed to provide any evidence that Credit Exchange satisfies this definition. The parties do not dispute that the nature of Defendants' business is to provide referral services to customers over the phone to a network of debt management and debt settlement services and programs. (Vanderhoof Decl. ¶¶ 2–3; Kluss Decl. ¶¶ 5–6; Trice Decl. ¶¶ 5–6.) Defendants have not provided any evidence regarding the percentage of the annual dollar volume of referral services that are provided directly to consumers. Nor have Defendants provided any evidence that the debt referral services that Credit Exchange provides have a "retail concept." *See Mitchell*, 359 U.S. at 292–93 (discussing whether lending money is a "sale" of a "service"); *La Parne v. Monex Deposit Co.*, 714 F. Supp. 2d 1035, 1041 (C.D. Cal. 2010). Indeed, the Department of Labor has issued extensive regulations identifying types of businesses that typically lack

a "retail concept" that include credit companies and loan offices.[2] *Compare* 29 C.F.R. § 779.317 (listing banks, credit companies, credit rating agencies and loan offices as examples of establishments lacking "retail concept"), *with* 29 C.F.R. §§ 779.318–.320 (describing retail establishments as businesses that are open to the public, including jewelry stores, liquor stores, furniture stores, department stores, cafeterias etc.) Plaintiffs are entitled to judgment as a matter of law that they are not "exempt" from overtime pay under the "retail or service establishment" exemption.

Defendants have similarly failed to present any evidence to show that Plaintiffs are exempt from overtime pay under the "administrative" employee exemption. 29 U.S.C. § 213(a)(1). To establish this exemption, Defendants must show that Plaintiffs perform "executive or administrative" duties and that they are paid on a "salary basis." *See Auer v. Robbins*, 519 U.S. 452, 455 (1997) (finding that Section 13(a)(1) of the FLSA expressly gives Secretary of Labor broad authority to define a bona fide administrative or executive employee and citing 29 C.F.R § 541.1(a)–(f)). The "duties test" prong of the administrative exemption requires that an employee's primary duty is "the performance of office or non-manual work directly related to the management or general business operations" of the employer's business and "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(2), (3). Defendants have not presented any evidence that Plaintiffs performed duties related to "management or general business operations" or that they exercised "discretion and independent judgment" in their jobs as Debt Consultants. Instead, Plaintiffs have submitted substantial evidence that they did not have any role in hiring or supervising other employees, (Kluss Decl. ¶ 4; Trice Decl. ¶ 4), and that they were

---

[2] Although the Department of Labor regulations are not binding on this Court, the Ninth Circuit and other district courts implicitly assume that Congress delegated the authority to the Department of Labor to define "retail or service establishment" and look to Department of Labor regulations for additional guidance to interpret the meaning of the statute so long as the regulations are a "reasonable construction" of the statute. *See, e.g., Gieg*, 407 F.3d at 1048–49 & n.13; *La Parne*, 714 F. Supp. 2d at 1039.

required to follow a strict script when speaking with potential customers. (Kluss Decl. ¶ 5; Trice Decl. ¶ 5; Vanderhoof Dep. 39: 22–41:20). Mr. Vanderhoof admitted in his deposition that he chose which debt management services or programs would be included in the network to which they referred and that the Debt Consultants could not refer customers to agencies outside the network. (Dep. 34:4–20.) Mr. Vanderhoof also drafted the scripts Debt Consultants used to guide their phone calls. (*Id.* 40:10–25.) Defendants have also not presented any evidence that Plaintiffs' commission pay was the equivalent to being paid on a "salary basis." *See* 29 C.F.R. § 541.602(a). Plaintiffs are entitled to judgment as a matter of law that they are not exempt from overtime pay under the "administrative" exemption.

Plaintiffs also have presented undisputed evidence that shows that they worked more than 40 hours per week. Specifically, Plaintiffs stated that they often worked 50 to 60 hours per week. (Kluss Decl. ¶ 7; Trice Decl. ¶ 7) Although the Employee Handbook states that full time employees are normally scheduled to work 40 to 48 hours per week, (Vanderhoof Decl. Ex. 1 at § 3.2), Mr. Vanderhoof admitted that he did not always see employees enter and exit and that he would not know whether Plaintiffs worked during the times that the office was technically closed. (Vanderhoof Dep. 50:25.) Defendants have not submitted any evidence that shows that Plaintiffs worked less than forty hours per week. Mr. Hong also admitted that to the best of his recollection, employees were not paid "overtime" for any hours they worked in excess of 40 hours. (Hong Dep. 47:1–13). In light of this evidence, Plaintiffs are entitled to partial summary judgment regarding Defendants' liability under the FLSA for failure to pay overtime compensation. However, a genuine issue of material fact remains regarding the amount of Plaintiffs' damages. Plaintiffs have not presented any evidence regarding the "regular rate at which they are employed." 29 U.S.C. § 207(a), (e). Plaintiffs also have not provided evidence that matches the number of hours they worked in a particular week or month to the amount that they were paid. Moreover, Plaintiff Trice has only submitted earnings

statements for approximately two months, but states that he was employed at Credit Exchange for approximately one year. (Trice Decl. ¶ 2; *id.* Ex. A.). These and other damages issues will need to be resolved at trial.

**B. California Labor Code "Commissioned Employee" Exemption**

Defendants have also failed to present sufficient evidence that, even if taken in the light most favorable to Defendants, demonstrates that there is a genuine issue of material fact regarding whether Plaintiffs are exempt from overtime payment under California law. *See* Cal. Lab. Code §§510, 1194. Employees in "professional, technical, clerical, mechanical or similar occupations" are exempt from overtime compensation if they (1) earn more than half of their total income from commissions, and (2) earn more than one and one-half times the minimum wage for every hour of the week actually worked. Cal. Code Regs. tit. 8, § 11040, ¶ 3(D). Although it is undisputed that after the first four weeks of employment, Plaintiffs were paid on a "commission only basis," Defendants have not presented any evidence to show that the compensation is a "commission" under California law. California courts have held that a compensation scheme must satisfy two requirements to be deemed "commission wages" for purposes of the exemption: (1) the employees must be involved principally in selling a product or service, not making the product or rendering the service, and (2) the amount of the employees' compensation must be a percent of the price of the product or service. *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785, 803–04 (1999) (citing *Keyes Motors, Inc. v. Division of Lab. Standards Enforcement*, 197 Cal. App. 3d 557, 563 (1987)). It is undisputed that as Debt Consultants, Plaintiffs spent nearly all of their hours worked calling potential customers to offer referral services to a specified network of debt management companies. (Vanderhoof Decl. ¶¶ 3, 8.) However, Defendants have not presented any evidence that Plaintiffs actually "sold" debt management services. Indeed, Mr. Vanderhoof repeatedly testified in his deposition that his employees were "credit counselors," (Dep. 18:24), who

-9-

"helped clients make a decision" regarding whether and which debt management service to seek, (Dep. 41:6–18). *See Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1119–20 (S.D. Cal. 2006) (finding that defendant had failed to meet its initial burden to show that plaintiffs' work duties involved selling a product or service); *Keyes Motors, Inc.*, 197 Cal. App. 3d at 563–64 (finding that mechanics' diagnosis of need repairs is labor, not sales, even if it results in sale of parts and labor for employer). It is also undisputed that Plaintiffs' commission was a percentage of the first initial monthly payment that a customer ultimately made to one of the pre-selected debt management programs. (Kluss Decl. ¶ 9; Trice Decl. ¶ 9; Vanderhoof Decl. "Sales Agent Pay Plan".) The amount of the commission depended on the amount of debt that the customer owed, rather than the price or value of the debt management program or service sold. (Kluss Decl. ¶ 9; Trice Decl. ¶ 9; Vanderhoof Decl. "Sales Agent Pay Plan".) The percentage of the commission was based on the number of referrals the employee had made that month. (Kluss Decl. ¶ 9; Trice Decl. ¶ 9; Vanderhoof Decl. "Sales Agent Pay Plan".) Defendants have failed to present any evidence or legal authority that shows that the amount of debt that the customer owes reflects the "value" of the debt management program such that Plaintiffs' commissions were based on the "value" of services sold. *See Barnett v. Washington Mut. Bank, FA*, No. C 03-00753 CRB, 2004 WL 1753400, at *8 (N.D. Cal. Aug. 5, 2004).

Moreover, Defendants have not presented any evidence to support their argument that Plaintiffs were paid more than one-half the minimum wage for all of the hours they actually worked. Plaintiffs submitted copies of their weekly earnings statements that show that they often earned between $300 and $400 per week, which Defendants argue, based on a 48-hour work week, exceeds the minimum hourly wage for 2007 for 40 hours plus time-and-a half for 8 hours. (Def.'s Mem. P. & A. Opp'n Mot. Summ. J. at 3; Vanderhoof Decl. ¶ 10.) But Defendants have failed to present any evidence of the number of hours that Plaintiffs actually worked in any given week or matched that

evidence to the amount Plaintiffs earned in any given week to show whether Plaintiffs fall within the exemption. Mr. Vanderhoof testified at his deposition that Credit Exchange human resources and management personnel compared Debt Consultants' weekly pay to the number of hours the office was open on a monthly basis, rather than the hours they actually worked, to ensure that the amount that they earned in a month was greater than the overtime calculation plus minimum wage. (Vanderhoof Dep. 51: 4–22.) Mr. Vanderhoof also admitted that he did not always see employees enter and exit and that he would not know whether Plaintiffs worked during the times that the office was technically closed. (Vanderhoof Dep. 50:25.) Because of Defendants' failure of proof, Plaintiffs are entitled to judgment as a matter of law that they are not exempt from overtime compensation under the "commissioned employee" exception and that they are owed overtime compensation under California law.[3]

**C. Waiver of California Labor Code Claims**

Defendants also argue that Plaintiffs waived their California Labor Code claims by signing a general release of all claims against Defendants at the termination of their employment in exchange for $200 and $300, respectively. (Defs. Mem. P. & A. Opp'n Summ J. at 9.) It is undisputed that Plaintiffs signed general release agreements that state that they release all known and unknown claims under "state or local laws, arising out of or in any way related to [Plaintiffs'] employment with [Credit Exchange] or termination of that employment." (Vanderhoof Decl. Ex. 2, 3.) However, California courts have held that the enforceability of agreements to release claims for Labor Code violations turns on whether there is a bona fide dispute over the employee's past wages. *See Watkins v. Wachovia Corp.*, 172 Cal. App. 4th 1576, 1587 (2009) (distinguishing between wage

---

[3] Although Defendants have failed to produce any evidence to rebut Plaintiffs' evidence that they worked more than 40 hours per week and they were not paid overtime, a genuine issue of fact remains regarding the amount of damages that Plaintiffs are entitled to recover.

claims that are "concededly due" and wage claims where a bona fide dispute exists). California Labor Code Section 206.5 prohibits employers from requiring an employee to sign a release of a claim or right on account of wages due, unless those wages have been paid. Cal. Lab. Code § 206.5(a). "A release required or executed in violation of …this section shall be null and void as between the employer and the employee." *Id.* Reading Section 206.5 in conjunction with Section 206, which provides that in case of a dispute over wages, the employer shall pay all wages "conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled to as to any balance claimed," Cal. Lab. Code § 206, California courts have reasoned that Section 206.5 does not bar a plaintiff from voluntarily settling an existing bona fide wage dispute by executing a release in exchange for a payment. *Chindarah v. Pick Up Stix, Inc.*, 171 Cal. App. 4th 796, 802 (2009).

Defendants have failed to provide any evidence that Plaintiffs believed they possessed Labor Code violation claims during their employment such that there was "a bona fide dispute" regarding the amount of wages that they were owed at the time Plaintiffs signed the general releases. In *Watkins*, the court found that evidence that the plaintiff kept two sets of time sheets while she was an employee at Wachovia, one set reflecting the time she reported to Wachovia and one set reflecting the time she actually worked, together with evidence that the plaintiff had complained to management about not getting paid overtime, demonstrated that the plaintiff believed she possessed a claim for overtime pay at the time that she signed the release and that she voluntarily elected to receive enhanced severance benefits in exchange for releasing her claims against Wachovia. 172 Cal. App. 4th at 1527; *see also Chindarah*, 171 Cal. App. 4th at 799 (finding that plaintiffs had already filed wage and hour violation class action lawsuit at the time that they signed the releases). Defendants have not presented any such evidence here. Plaintiffs are therefore entitled to judgment as a matter of law on Defendants' waiver or release of claims defense.

## D. California Labor Code Meal Period Claim

Section 512 of the California Labor Code mandates a half-hour meal break for all employees working in excess of five hours, and a second half-hour meal break for employees working ten hours. Cal. Lab. Code § 512. An employer that fails "to provide" an employee a meal period must pay the employee an additional hour of pay at the employee's regular rate of compensation for each work day that the meal period was not provided. Cal. Lab. Code § 226.7(b). California courts disagree as to whether the word "provide" requires that an employer make meal breaks "available" or that the employer "ensure" that employees actually take meal breaks. *Compare Hernandez v. Chipotle Mexican Grill, Inc.*, 189 Cal. App. 4th 751, 762 (2010) (finding that statute does not require employers to ensure that meal breaks are actually taken), *and Brown v. Federal Express Corp.*, 249 F.R.D. 580, 585–86 (C.D. Cal. 2008) (declining to follow *Cicairos* and finding that because statute only requires employer to make meal breaks available to plaintiffs, individual fact issues predominate), *with Brinker Restaurant Corp. v. Superior Court*, 165 Cal. App. 4th 25, 31 (2008), *review granted and opinion superseded by* 85 Cal. Rptr. 3d 688 (2008), *and Brinkley v. Public Storage, Inc.*, 167 Cal. App. 4th 1278, 1290 (2008), *review granted and opinion superseded by* 87 Cal. Rptr. 3d 674 (2009), *and Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949, 962 (2005) (finding defendant employer was not entitled to summary judgment on plaintiffs' meal break claim because the employer could not "assume" that truck driver employees took meal breaks where the employer used a computer system to monitor drivers' activities including speed, starts and stops, did not schedule meal breaks or include an activity code for meal breaks in the computer system, and pressured drivers to make more than one daily trip).

Plaintiffs argue that they are entitled to summary judgment under either interpretation because Plaintiffs were required to make 200 "dials" per day, which made it "difficult if not impossible" to take meal breaks. (Pls.' Mem. P. & A. Supp. Mot.

Summ. J. at 13; Kluss Decl. ¶ 8; Trice Decl. ¶ 8.) Plaintiffs presented evidence that failing to reach the minimum production goals of referring a certain number of clients per month might result in a warning or eventual termination. (Hong Dep. 42:3–25; Vanderhoof Dep. 44:5–9.) Mr. Hong also stated in his deposition that he sometimes saw employees eating lunch at their desk. (Dep. 81: 9–10.) However, Defendants presented evidence that the 200 dials per day was a "suggestion" and that employees were not penalized if they failed to make the 200 calls. (Vanderhoof Dep. 27: 8–25.) Defendants also presented evidence that each employee was provided a copy of the Employee Manual which outlined the meal and break periods as required by California law and stated: "It is Company policy that you take every meal and rest period to which you are entitled. You are to take your meal and rest periods as scheduled." (Vanderhoof Decl. ¶¶ 11–12.) Defendants also presented evidence that Defendants' meal break policy was communicated to all of Credit Exchange's managers. (*Id.*) Mr. Hong's deposition also reveals that "at one time there was a break room" and that there was a place downstairs for employees to take their lunch away from their desks. (Hong Dep. 80:24–81:14.) Defendants' evidence is sufficient to demonstrate that there is a genuine issue of material fact regarding whether Defendants' policies or practices forced Plaintiffs to work through their meal breaks. Plaintiffs are not entitled to summary judgment on this claim.

**E. California Labor Code Waiting Time Penalties and Wage Statement Violations**

Under California law, Plaintiffs are entitled to "waiting time" penalties of up to 30 days of pay at their regular rate if they show that Defendants "willfully" failed to timely pay all wages due and owing at the end of their employment. Cal. Lab. Code § 203. A "willful" failure to pay wages occurs when an employer intentionally fails to pay wages to an employee, Cal. Code Regs. tit. 8, § 13520, and does not require "a deliberate evil purpose to defraud workmen of wages which the employer knows to be due." *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7–8 (1981). However, a good faith dispute

as to whether any wages were due would be a defense to an action for such penalties. *See id.* at 8. Plaintiffs have not presented any evidence to support their assertion that Defendants intentionally misclassified them as exempt and thus "willfully" failed to pay them the overtime wages that they were due. Mr. Vanderhoof stated that Credit Exchange believed that Plaintiffs were not entitled to overtime pay based on the amount that they earned. (Decl. ¶ 9.) Indeed, Mr. Vanderhoof's deposition testimony demonstrates that he consulted an attorney in setting the commission structure for Debt Consultants and completing monthly comparisons of the consultants' hours worked and amount of pay to make sure they were within the "safe zone." (Vanderhoof Dep. 46:10–47:25.) Moreover, Plaintiffs have not presented any evidence that Defendants intentionally deprived them of their meal breaks. As discussed above, Defendants stated that it was company policy to provide meal breaks and that Mr. Vanderhoof instructed Credit Exchange managers to ensure that the meal and rest periods were made available to all employees. (Vanderhoof Decl. ¶ 12.) Plaintiffs are not entitled to summary judgment on their Section 203 claim.

Similarly, Plaintiffs are entitled to damages or civil penalties if they show that Defendants "knowing[ly] and intentional[ly]" failed to provide itemized wage statements that list the nine statutorily required elements, such as gross wages earned, total hours worked by the employee, and all applicable hourly rates in effect during the pay period. Cal. Lab. Code § 226(a),(e). It is undisputed that Plaintiffs' weekly earning statements did not set forth the total hours worked or the applicable hourly rates in effect each week and the corresponding number of hours worked at each hourly rate. (Kluss Decl. Ex. A; Trice Decl. Ex. A.) However, Defendants have presented evidence that they believed Plaintiffs were exempt from overtime compensation and therefore their wage statements were not required to list the total hours worked and hourly rate. (Vanderhoof Decl. ¶ 9.) Plaintiffs have not established as a matter of law that Defendants "knowingly and

intentionally" failed to provide itemized wage statements and are not entitled to summary judgment on their Section 226 claim.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED with respect to Defendants' liability under the FLSA and California law for their failure to pay Plaintiffs overtime compensation. Plaintiffs' motion for summary judgment is DENIED with respect to Plaintiffs' other California Labor Code violation claims.

DATED: January 27, 2010

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE